EVELYN FINE DeVINNEY, PLAINTIFF-RESPONDENT, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, DEFENDANT-APPELLANT.

Submitted January 20, 1942—Decided April 1, 1942.

Before Justices PARKER, DONGES and COLIE.

For the appellant, *Drewen & Nugent.*

For the respondent, *Archie Elkins.*

The opinion of the court was delivered by

DONGES, J. Plaintiff, named as beneficiary in a policy of insurance on the life of her mother, recovered a verdict in the Hoboken District Court. The case was tried without a jury and the defense was that the policy was issued by reason of fraud practiced by the assured in the answers to questions in the application for the policy signed by the assured.

The sole ground of appeal is that:

"The trial court erred in denying defendant-appellant's motion for judgment in its favor, which motion was made at the conclusion of the trial."

If the ground of appeal is taken to mean the refusal of a motion, in effect, to direct a verdict for defendant, it could be granted only because of an utter failure of proof on behalf of plaintiff upon the issue involved. In *Israel* v. *Travelers Insurance Co.,* 116 *N. J. L.* 154, the rule was stated to be: "The court must assume as true all testimony which has been presented on behalf of the plaintiff and he must be given the benefit of all lawful deductions therefrom. If this hypothesis will support a verdict for the plaintiff the motion should be denied."

If the trial court would be obliged to deny a motion for directed verdict, if a jury had been empaneled to try questions of fact, then there was no error in the refusal in this case. Motions for nonsuit and for directed verdict raise questions of law, not questions of fact.

By *R. S.* 2:32-204 appeals from District Courts are permitted only "in point of law or upon the admission or rejection of evidence." *Duff* v. *Prudential Insurance Co.*, 90 *N. J. L.* 646.

The defense was fraud in the answers of assured. Was the proof as to the fraud such that reasonable minds could differ as to the result to be reached? We conclude that they could not and that the trial judge erred in refusing the motion for a directed verdict for defendant.

The application was dated June 28th, 1939, and the policy was dated July 17th, 1939. The application, made a part of the policy, contained the following questions and answers:

"18. What is the present condition of health of person proposed? Good.

"19. When last sick? Month—Year. Dec. 1938. Of what disease? Cold.

"20. Does any physical or mental defect or vision impairment exist? No.

"21. Has person proposed ever suffered from * * * disease of the * * * liver *· * *? Give particulars. None.

"23. Has person proposed received treatment by a physician or at a dispensary, hospital or sanitarium within last three years? If so, state where, when and for what illness. J. City Medical Center, Dec. 1938. Cold."

Dr. Louis Dodson, examining physician for appellant, examined assured and stated that he asked her questions Nos. 21, 22 and 23. About previous hospitalization she answered that in "December, 1938, in Medical Center two weeks for nervousness following explosion in the house next door. No pathology found. Complete recovery. No sequelae." He passed her as appearing to be in good health.

Dr. Louis Perkel testified that assured was first admitted to the Medical Center on November 26th, 1937, and remained until December 20th, 1937; that he attended her during that time; that his diagnosis was that she "suffered from cirrhosis of the liver, due to syphilis;" that she returned to the Medical Center on October 11th, 1938, and remained until November 3d, 1938; that on May 1st, 1939, she was again admitted to

the Center and remained until May 11th, 1939, when she was treated by Dr. Mintz. This last admission to the hospital was a matter of about two months prior to the application for insurance.

Dr. Mintz testified that the assured told him at that time that she had been in the hospital before and that she had had several X-rays: he testified that she also had told him that she had had "this blood disease," and told him that she was advised by her doctor to come in for treatment because of the present symptoms which she possessed now. He also testified: "Well, she also told me that she had been receiving treatment since December, 1938, and had called an ambulance approximately once a month—I have it right here in my notes—for these upper quadrant pains—sharp pains; and she told me her generalized swelling—to use the lay term—had been so much she sought admission to the hospital for treatment."

Dr. Perkel further testified that in 1938 he told assured that "her liver was still involved;" and in 1939, in response to her inquiry as to "why she wasn't getting better—why she had to be tapped," he told "her she had a chronic blood disease that it was difficult to cure and had to take time;" he told her she had cirrhosis of the liver; and further he told her that "her condition is chronic and that it takes time."

According to the uncontradicted testimony, assured was told about the seriousness of her condition not more than two months prior to the signing of the application in which she stated she was in good health and had never suffered from disease of the liver.

Plaintiff sought to overcome the effect of this testimony by the testimony of the witness Murray that the assured told the solicitor for the appellant, who wrote down the answers of assured on the application blank, that she had been several times in the Medical Center, but did not know what her trouble was, that he had better check up with the Medical Center.

In *Kerpchak* v. *John Hancock Mutual Life Insurance Co.,* 97 *N. J. L.* 196, it was held:

"The legal rule is that where, as here, a policy provides, as required by our Insurance law, that 'all statements made

by the insured shall, in the absence of fraud, be deemed representations and not warranties,' the policy will be avoided for a misrepresentation in the application,· made a part thereof, if the misrepresentation be material and fraudulent; that is to say, if it be the statement of something as a fact, which is untrue, and which the insured stated, knowing it to be untrue, and with an intent to deceive, or which he stated positively as true, without knowing it to be true, and which had a tendency to mislead; such fact in either case being material to the risk.

"Every fact which is untruly stated or wrongfully suppressed must be regarded as material, if the knowledge or ignorance of it would naturally and reasonably influence the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium.

"A false statement in the application made a part of the contract that the applicant had not consulted or been attended or treated by a physician, is material to the risk, and, if made knowingly and willfully, will avoid the policy. *Metropolitan Life Insurance Co.* v. *McTague,* 49 *N. J. L.* 587."

In the instant case there were several false answers to material questions. If the testimony of Murray be given full credence and it is considered that she told appellant's solicitor she had several times been in Medical Center, we still have her answer that no physical defect existed at the time of the signing of the application, and that she never suffered from disease of the liver, when the testimony of Dr. Perkel is definite that she knew she had such complaint and that it was chronic. The testimony is that assured was superintendent of a large apartment house, that she was an intelligent woman, who demanded to know her ailment. She signed the application and must have known its contents. She knew she was not then and had not been in good health for some years. A statement of her true physical condition, as known to her, and of her treatment, would have put the insurer on its guard, and she knew that her application probably would be rejected. Giving assured the benefit of every presumption in her favor, the irresistible conclusion to be drawn from the uncontradicted

testimony is that assured willfully refrained from disclosing the truth and made misstatements of material facts. As to these essential facts there is no controversy. Hence, the finding of the trial judge is without factual support. This court will not review findings of fact of a District Court when supported by evidence. *Duff* v. *Prudential Insurance Co.*, *supra*. In the case under review, as stated, there is no contradiction of the appellant's proof of material facts and there is no room for doubt as to the falsity of assured's answers as to the material information. In the situation presented, the question was one of law and not of fact. *Urback* v. *Metropolitan Life Insurance Co.*, 127 *N. J. L.* 585.

The judgment under review is reversed, with costs.